IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Susan Doxtator, Arlie Doxtator, and Sarah Wunderlich, as Special Administrators of the Estate of Jonathon C. Tubby,<br>Plaintiffs,<br><br>vs.<br><br>Erik O'Brien, Andrew Smith, Todd J. Delain, Heidi Michel, City of Green Bay, Brown County, Joseph P. Mleziva, Nathan K. Winisterfer, Thomas Zeigle, and John Does 1-5,<br><br>Defendants, | Case No. 1:19-cv-00137-WCG<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS** |

On February 21, 2020, the Court sanctioned Officer Salzmann and Defendant City of Green Bay ("Green Bay") for their conduct in improperly refusing to answer questions during Officer Salzmann's deposition. ECF 77. Because Defendant's conduct forced Plaintiffs to incur the expense of moving to compel a second deposition, the Court ordered Defendants to pay those expenses, including attorney's fees, as well as the costs associated with continuing Officer Salzmann's deposition. Now, more than five months after that deposition concluded and ten months after the Court issued its sanctions order, Defendants have refused to pay. Plaintiffs must now unfortunately burden the Court with yet another motion to require Defendants to meet their obligations in this litigation. By this motion, Plaintiffs respectfully request the Court issue an order directing Defendants to pay Plaintiffs' fees and costs, as detailed in the declaration accompanying this motion, as well as those fees and costs incurred to bring the instant motion.

## I. Background

Officer Scott Salzmann, an eye-witness to the fatal shooting of Mr. Tubby, was first deposed on December 20, 2019. ECF 74 ¶ 2 (Jan. 14, 2020 Decl. of Tahdooahnippah in Supp. Mot. Compel). At his deposition, counsel for Plaintiffs observed Officer Salzmann had several tattoos of red dots within golden eagle feathers against the backdrop of an American flag. *Id.* ¶ 4. Aware that these tattoos signified the killing of an "enemy," *see* ECF 72 at 3, and that Officer Salzmann had been the shooter in several officer-involved shootings, Plaintiffs' counsel asked Officer Salzmann about the meaning or significance behind his tattoos. ECF 74 ¶ 6; *Id.,* Ex. B at 140:11—141:25. Officer Salzmann refused to answer these questions, stating only that he is "very patriotic" and that the tattoos have a "personal symbolic reason of meaning to me." *Id.,* Ex. B. at 141:1-25. Officer Salzmann's counsel did not state an objection to the questions regarding the tattoos or direct Officer Salzmann to answer them. *See generally, id.,* Ex. B.

Plaintiffs' counsel subsequently sought agreement from Defendants to have Officer Salzmann re-produced for a deposition in light of his refusal to answer these questions. Tahdooahnippah Decl., Ex A (Jan 3, 2020 Letter). Defendants refused, stating that "[a]ny suggestion that Officer Salzmann's tattoos 'celebrate' his involvement in officer-involved shootings is disgraceful" and Plaintiffs should feel "free to bring a Motion to Compel before the Court." *Id.,* Ex. B. (Jan. 7, 2020 Letter).

Thereafter, on January 14, 2020, Plaintiffs moved to compel the second deposition of Officer Salzmann. In their motion, Plaintiffs highlighted the well-established rule that a party may not simply refuse to answer questions at a deposition. ECF 72 at 6. Plaintiffs also explained why Officer Salzmann's refusal to answer Plaintiffs' questions was indefensible; neither Officer Salzmann nor his counsel claimed his non-responses at the deposition were necessary to preserve

a privilege or to enforce a limitation ordered by the court. ECF 72 at 7-8. In their opposition, Defendants claimed Officer Salzmann's refusal to answer was justified because the questions were supposedly irrelevant (which is not a legally supportable basis for refusing to answer) and again claimed the notion that Officer Salzmann's tattoos celebrated his involvement in officer-involved shootings was "absurd[]" and "baseless." ECF 75 at 3-5.

Just three days after briefing closed on Plaintiffs' motion to compel, the Court granted Plaintiffs' motion in its entirety, sanctioned the Green Bay Defendants, and ordered them to pay Plaintiffs' expenses resulting from that motion as well as those incurred to hold the second deposition of Officer Salzmann. ECF 77. Defendants initially agreed for Salzmann to sit for a second deposition on April 2, 2020, but the deposition was cancelled due to the initial wave of government stay at home orders resulting from the beginning of the COVID19 pandemic. After numerous attempts to reschedule the second deposition, *see* Tahdooahnippah Decl., Ex. C (June 23, 2020 Notice of Deposition)*,* Ex. D (July 27, 2020 Am. Notice of Deposition), Plaintiffs finally obtained the opportunity on August 4, 2020 to continue questioning Officer Salzmann regarding the meaning or significance of his tattoos.

During the second deposition, despite Defendants' earlier protestations that Plaintiffs' suspicion that the tattoos commemorated Officer Salzmann's shooting of civilians was "disgraceful" or "absurd[]" or "baseless," Officer Salzmann *confirmed* that the meaning behind the eagle feather tattoos was not his "patriotism" but instead to commemorate his killing of two civilians – Ben Sonnenberg and David Spencer. Tahdooahnippah Decl., Ex. E (2d Depo. Tr. 175:5—176:12). Salzmann also acknowledged that the generally accepted meaning of the eagle feather tattoos is that an "enemy" has been killed by the wearer. *Id.* at 181:17—182:1. Thus, more than eight months after Officer Salzmann's initial refusal to answer the questions about his tattoos

3
Case 1:19-cv-00137-WCG   Filed 12/31/20   Page 3 of 13   Document 152

and after Defendants' repeated attempts to deny the connection between the tattoos and Officer Salzmann's record of officer-involved shootings, Officer Salzmann confirmed what Plaintiffs had suspected all along—Officer Salzmann tattooed himself to commemorate his shooting of two civilians. That Officer Salzmann's second deposition testimony provided critical support for Plaintiffs' claims only further justifies the Court's previous award of sanctions. *See* ECF 132 at 21-25 (discussion of the Green Bay Police Department's widespread custom of excessive force).

On September 4, 2020, Plaintiffs provided Defendants with an invoice reflecting the expenses Plaintiffs incurred to bring the motion to compel and take the second deposition. Tahdooahnippah Decl., Ex. F (Sept. 4 email and attachment). The two-page invoice, totaling $12,827.05, contained detailed descriptions of the work performed by Plaintiffs' counsel to research, draft, revise, and finalize the two memoranda in support of the motion to compel, as well as the costs incurred to arrange for and conduct the second deposition. Specifically, the invoice included the following entries (Plaintiffs' have added headings and subtotals below in italics).

| Date | Timekeeper | Hours | Value | Billing Description |
|---|---|---|---|---|
| *Fees incurred to prepare and file motion and memorandum in support of motion to compel* | | | | |
| 1/8/20 | Huerter | 1.4 | ■ | Review S. Salzmann deposition transcript; outline argument for motion to compel second deposition |
| 1/9/20 | Huerter | 7.2 | ■ | Research legal standard for motion to compel; research case law granting motion to compel where deponent refused to answer questions propounded in deposition; research procedural requirements for moving to limit deposition based on annoyance or harassment; research motions to compel second deposition in cases involving officer-involved shootings; draft brief in support of motion to compel officer Salzmann second deposition |
| 1/9/20 | Tahdooahnippah | 1.1 | ■ | Draft and revise motion to compel deposition of S. Salzmann |
| 1/10/20 | Huerter | 3.2 | ■ | Revise brief based to respond to comments and edits of F. Tahdooahnippah; draft Tahdooahnippah declaration; research case law to support the award of incidental costs in |

| Date | Attorney | Hours | Amount | Description |
|---|---|---|---|---|
| | | | | preparing a second deposition resulting from a successful motion to compel |
| 1/13/20 | Huerter | 0.7 | ▮ | Draft motion paper and update brief in support of motion to compel and for sanctions |
| 1/13/20 | Tahdooahnippah | 0.9 | ▮ | Draft and revise motion to compel and supporting declaration |
| 1/13/2020 | Durocher | 0.9 | ▮ | Review and revise draft motion to compel; review draft F. Tahdooahnippah declaration |
| 1/14/2020 | Huerter | 0.3 | ▮ | Draft Rule 37 compliance certification and research local rule filing requirements for motion to compel |
| 1/14/2020 | Tahdooahnippah | 0.4 | ▮ | Draft and revise motion to compel and supporting documents |
| 1/15/2020 | Huerter | 0.3 | ▮ | Research local rules to determine response and reply deadlines for motion to compel; docket dates and inform F. Tahdooahnippah |
| | *Subtotal* | *16.4* | *6,518.50* | |
| | *Fees incurred to prepare reply memorandum in support of motion to compel* | | | |
| 2/10/2020 | Huerter | 1.6 | ▮ | Analyze defendants' response brief in opposition to motion to compel and for sanctions; analyze cases relied upon by defendants in opposition; outline reply brief |
| 2/11/2020 | Huerter | 3.4 | ▮ | Draft reply brief in support of motion to compel and for sanctions |
| 2/12/2020 | Huerter | 2.5 | ▮ | Draft reply brief in support of motion to compel; research case law to support arguments |
| 2/13/2020 | Huerter | 2.8 | ▮ | Draft and finalize first draft of reply brief in support of motion to compel |
| 2/15/2020 | Tahdooahnippah | 0.2 | ▮ | Review and analyze draft reply brief in support of motion to compel |
| 2/17/2020 | Huerter | 1.7 | ▮ | Revise reply memorandum to reflect edits of F. Tahdooahnippah; prepare appendix of unreported cases |
| 2/17/2020 | Tahdooahnippah | 0.6 | ▮ | Review and revise reply brief in support of motion to compel |
| 2/18/2020 | Tahdooahnippah | 1.1 | ▮ | Review and revise reply brief in support of motion to compel |
| | *Subtotal* | *13.9* | *5,178.50* | |
| | *Fees and costs incurred to prepare for and conduct second deposition of Officer Salzmann* | | | |
| 2/21/2020 | Tahdooahnippah | 0.2 | ▮ | Review order on motion to compel |
| 8/4/2020 | Tahdooahnippah | 0.7 | ▮ | Prepare for and attend deposition of S.Salzmann |
| 8/21/2020 | Veritext Legal Solutions | | 361.55 | S. Salzmann deposition costs: Transcript Services $176.80, Professional Attendance $106.25, Virtual Services $73.75, Delivery and Handling $4.75 |
| | *Subtotal* | *.9* | *825.50* | |

| *Fees incurred to prepare bill of costs to Defendants* ||||| |
|---|---|---|---|---|
| 8/6/2020 | Reckin | 1 | | Review billing records to compile time entries related to the motion to compel the second deposition of S. Salzmann |
| | | **TOTAL** | **$12,827.05** | |

*See also* Tahdooahnippah Decl., Ex. F (original invoice provided to Plaintiffs). After Defendants did not respond to Plaintiffs' request for payment, Plaintiffs emailed Defendants a week later to request an update on the status of payment. *Id.,* Ex. G (email thread beginning on Sept. 11). Defendants then responded to state their "opinion that costs associated with the Motion to Compel are excessive" and that "additional explanation will be forthcoming." *Id.*

The next week, Defendants objected to the invoice, not because it sought excessive fees but instead because it contained "block-type billing" descriptions. *Id.,* Ex. H (Sept. 16 email objecting to block billing). To accommodate this concern,[1] Plaintiffs broke out each of the discrete items detailed in the invoice into separate entries and apportioned the time spent on each of these items accordingly. The descriptions and aggregate amount of time recorded in the revised invoice were identical to those recorded in the "block-type billing" invoice. The revised invoice, however, included more granular descriptions for the time spent on each sub-task. *Id.,* Ex. I (Revised invoice). On October 27, 2020, Plaintiffs provided the revised invoice to Defendants for payment. *Id.,* Ex. J (email transmitting revised invoice). Two days later, Defendants responded to state the City of Green Bay would review the revised invoice. *Id.*

After more than six weeks had passed, Plaintiffs requested an update on the status of payment from Defendants. *Id.,* Ex. K. Defendants did not respond, prompting Plaintiffs to ask

---

[1] Plaintiffs accommodated this request as a professional courtesy, not because block billing in any way undermined their request for attorney's fees. "[B]lock billing is… a common and accepted practice in fee requests in the Seventh Circuit." *Knauf Insulation v. Johns Manville Corp.*, 2019 U.S. Dist. LEXIS 234144, *11 (S.D. Ind. Feb. 27, 2019) (citing *Farafas v. Citizens Bank & Trust*, 433 F.3d 558, 569 (7th Cir. 2006))

yet again for an update. *Id.* On December 18, 2020, Defendants responded to object to payment, stating that the "billing seem[s] excessive for a Motion to Compel." *Id.* Defendants provided no explanation for why the billing was excessive. Instead, Defendants stated they would be willing to pay only half of the fees and costs incurred by Plaintiffs. *Id.* In effort to avoid burdening the Court with the instant motion, Plaintiffs offered a compromise bill of costs but Defendants failed to timely respond to that compromise offer. *Id.*, Ex. L. Faced with no other choice, Plaintiffs now bring the instant motion to compel Defendants to pay fees and costs associated with Officer Salzmann's second deposition, as well as fees and costs incurred to bring this motion to collect payment of those expenses.

## II. Argument

In order to: research and draft a motion, draft supporting documents, draft a reply memorandum, prepare for and take a second deposition, *and* prepare a bill of costs, Plaintiffs incurred the very reasonable sum of $12,827.05. To accomplish all of these tasks for that low cost, Plaintiffs' attorneys made economic use of their time and delegated tasks appropriately. The economical use of time includes expending 16.4 hours to research, draft, revise, and file the motion and memorandum in support of the motion to compel, 13.9 hours to research, draft, revise, and file the reply memorandum in support of that motion; and less than 1 hour to prepare for and conduct Officer Salzmann's second deposition.[2] Tahdooahnippah Decl., Ex. I (Revised Invoice). Plaintiffs' attorneys took a cost-conscious approach to their work, leaving approximately 80% of the work to be completed by the attorney on the case with the lowest billing rate. *Id.* Plaintiffs'

---

[2] Paralegal Ann Reckin also performed 1 hour of work to compile time entries detailing the work performed on the motion to compel Officer Salzmann's second deposition, and then submit them to Defendants for payment. Tahdooahnippah Decl., Ex. I. Veritext, the remote deposition and transcription services provider that facilitated Officer Salzmann's second deposition, also charged $361.55 in deposition costs. Plaintiffs included both expenses in their bill of costs to Defendants.

attorneys also billed their standard rates to Defendants, *i.e.* the exact same rates they would bill to any client, which are "presumptively appropriate to use as the market rate" when assessing the reasonableness of attorney's fees. *People Who Care v. Rockford Bd. of Educ.,* 90 F.3d 1307, 1310 (7th Cir. 1996); *see also* Tahdooahnippah Decl. ¶ 3. For these reasons, as set forth in more detail below, Plaintiffs' request for fees and costs is reasonable and the Court should order Defendants to pay those expenses, as well as fees and costs Plaintiffs will incur to litigate the instant motion.

### A. Standard of Review

Federal Rule of Civil Procedure 37(a)(5)(A) provides that "if the motion [to compel] is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." In other words, "the Rule presumptively requires every loser to make good the victor's costs… [and] the burden of persuasion is on the losing party to avoid assessment of fees, rather than on the winning party to obtain such an award." *Senior Lifestyle Corp. v. Key Ben. Adm'rs*, Case No. 17-cv-2457, 2019 U.S. Dist. LEXIS 231613, *5-6 (S.D. Ind. Mar. 29, 2019).

After fees and costs have been awarded, as is the case here, the Court may be required to assess the reasonableness of attorney's fees sought by the prevailing party. "To determine a reasonable fee, the district court uses the lodestar method, multiplying the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Because the "[n]umbers of hours and reasonable rates are inherently factual matters," district courts have discretion to make upward or downward adjustments to fees requested by a prevailing party under Rule 37. *Dutchak v. Central States, Southeast & Southwest Areas Pension*

8

*Fund*, 932 F.2d 591, 596 (7th Cir. 1991). However, "[t]here is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett*, 664 F.3d at 639.

### B. Plaintiffs Expended a Reasonable Number of Hours to Litigate the Motion to Compel and Conduct the Second Deposition.

Plaintiffs' expended a reasonable number of hours to litigate the motion to compel and conduct the second deposition. Courts routinely approve attorney's fees requests for motions to compel that involve forty hours or more of work. *See Senior Lifestyle Corp. v. Key Ben. Adm'rs*, Case No. 17-cv-2457, 2019 U.S. Dist. LEXIS 231613, *14 (S.D. Ind. Mar. 29, 2019) (finding that 51.0 hours for the preparation, review, and litigation of a motion to compel was reasonable); *Paredes v. Cantu*, Case No. 15-cv-088, 2017 U.S. Dist. LEXIS 71021, *6 (N.D. Ind. May 10, 2017) (finding that 40 hours spent preparing motion to compel and performing related activities was reasonable); *Thompson v. Fajerstein*, Case No. 08-cv-3240, 2010 U.S. Dist. LEXIS 118271 (finding 40 hours spent preparing motion to compel was reasonable); *see also Knauf Insulation v. Johns Manville Corp.*, 2019 U.S. Dist. LEXIS 234144, *15 (S.D. Ind. Feb. 27, 2019) (finding hours spent to incur $45,436.23 in attorneys' fees to litigate motion to compel were reasonable); *Slabaugh v. State Farm Fire & Cas. Co.*, Case No. 12-cv-1020, 2014 U.S. Dist. LEXIS 61108, *10 (S.D. Ind. May 1, 2014) (finding 31.5 hours expended to litigate motion to compel was reasonable). Here, Plaintiffs were much more economical and efficient—to bring their motion, *and* prepare and take the second deposition *and* prepare a bill of costs, Plaintiffs' counsel expended a total of only 31.2 hours.

The reasonableness of these hours is further confirmed by the detailed invoice Plaintiffs provided to Defendants. *See* Tahdooahnippah Decl., Ex. I. Courts will reduce an attorney's fee request if the work involved overstaffing, duplicative work, a lack of relationship to the work performed, or insufficient explanations of the work performed. *See e.g. Senior Lifestyle Corp. v.*

9

*Key Ben. Adm'rs*, 2019 U.S. Dist. LEXIS 231613, *12-23 (S.D. Ind. Mar. 29, 2019); *see also Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) (While "efficiency can sometimes be increased through collaboration, overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicate billing when multiple lawyers seek fees."). Here, Plaintiffs' invoice reveals no such inefficiencies. To the contrary, it confirms a strict and efficient division of labor involving no overlap in the work performed by Plaintiffs' three attorneys. Jack Huerter, the junior attorney on the case, performed all of the research and prepared initial drafts of the briefing and motion papers. Tahdooahnippah Decl., Ex. I. Forrest Tahdooahnippah, the mid-level partner with primary responsibility for the case, spent just 4.3 hours reviewing and revising those two briefs, and approximately 1 hour preparing for and conducting the second deposition. *Id.* Skip Durocher, the senior partner advising on the case, spent less than 1 hour providing his input on the opening brief. *Id.* Further, the invoice leaves no doubt regarding the necessity of the work performed by Plaintiffs' attorneys—the detailed descriptions explain the work performed, the purpose of that work, and how it fit within the categories of fees and costs awarded by the Court in its February 21, 2020 order. *Id.* Accordingly, Plaintiffs amply demonstrate the judicious use of attorney time in litigating this discovery dispute, and the hours spent by Plaintiffs to bring the motion to compel and conduct the follow on deposition are appropriate.

### C. The Billing Rate for Plaintiffs' Attorneys are Reasonable

Plaintiffs' attorneys charged a reasonable hourly rate for the work performed to litigate the motion to compel and conduct the second deposition of Officer Salzmann. "A reasonable hourly rate as one that is 'derived from the market rate for the services rendered.'" *Pickett* 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). "The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying

10
Case 1:19-cv-00137-WCG   Filed 12/31/20   Page 10 of 13   Document 152

clients for the type of work in question." *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999) (internal citations omitted). "The attorney's actual billing rate for comparable work is ***presumptively*** appropriate to use as the market rate." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996) (emphasis added).

As the Seventh Circuit has emphasized, "the best measure of the cost of an attorney's time is what that attorney could earn from paying clients." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). Here, three attorneys contributed to Plaintiffs' motion to compel and each billed the standard hourly rates for their services. Tahdooahnippah Decl. ¶ 3 (explaining standard rates). Jack Huerter, a third-year associate at Dorsey & Whitney, billed at his standard rate of ▮▮▮. *Id.*, ¶3; *see also id.,* Ex. M. Forrest Tahdooahnippah, a mid-level partner at the firm with ten years of complex litigation experience, billed at his standard rate of ▮▮▮. *Id.* Skip Durocher, a senior partner at the firm with more than 30 years of complex litigation experience, billed at his standard rate of ▮▮▮. *Id.* Each of these lawyers is an Order of the Coif graduate of his respective law school and a former federal law clerk. *Id.* Because these fees are the same as those that would have been charged to a hypothetical client to litigate a motion to compel and conduct a follow on deposition, the fees are "presumptively appropriate." *Marcum v. Graphic Packaging Int'l, Inc.*, Case No. 13-cv-158, 2013 U.S. Dist. LEXIS 137290, *6 (N.D. Ind. Sept. 25, 2013) ("In determining whether the rates charged were reasonable, the Seventh Circuit has repeatedly found that an attorney's actual billing rate, as opposed to the local rate, is 'presumptively appropriate.'").

Moreover, courts in this district have routinely awarded fees at billing rates in line with those charged by Plaintiffs' attorneys. *See World Wrestling Entm't v. Patterson*, Case No. 03-cv-374, 2006 U.S. Dist. LEXIS 113317, *11 (E.D. Wis. Aug. 21, 2006) (approving billing rates for

11

Case 1:19-cv-00137-WCG   Filed 12/31/20   Page 11 of 13   Document 152

sanctions award equaling $645 and $360 per hour, after adjusting for inflation);[3] *Thao v. Midland Nat'l Life Ins. Co.*, Case No. 09-cv-1158, 2013 U.S. Dist. LEXIS 196538, *2 (E.D. Wis. June 7, 2013) (awarding $49,515.50 in attorneys' fees generated in opposing plaintiff's motion to compel); *Rabetski v. Century Oaks of Appleton, Inc.*, 2018 U.S. Dist. LEXIS 93954, *8 (E.D. Wis. ) (finding $350.00 per hour to be a reasonable billing rate, ███████████████████████████████

███████████████████████████████

Lastly, to the extent Defendants may argue that more localized hourly rates for legal services should apply to Plaintiffs' request for attorney's fees, Defendants argument would be unavailing. "[I]f an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount." *Marcum v. Graphic Packaging Int'l, Inc.*, Case No. 13-cv-158, 2013 U.S. Dist. LEXIS 137290, *6 (N.D. Ind. Sept. 25, 2013); *see also Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) (finding Chicago rates appropriate for case in southern Illinois); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150-51 (7th Cir. 1993) (finding Chicago rates appropriate for case in Madison, Wisconsin); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768-69 (7th Cir. 1982) (finding New York and Washington D.C. rates appropriate for case in South Bend, Indiana); *Elite Enters., Inc. v. ASC, Inc.*, No. 1:04-CV-94, 2006 U.S. Dist. LEXIS 35803, 2006 WL 1520636, at *5-7 (N.D. Ind. May 30, 2006) (finding Philadelphia rates appropriate for case in Fort Wayne, Indiana). Therefore, because Plaintiffs' counsel seeks reimbursement for services rendered at their standard rate, which is presumptively reasonable, Plaintiffs' request for attorney's fees should be granted.

### III. CONCLUSION

---

[3] The $500 and $280 hourly rates charged in 2006 are the equivalent of $645.41 and $361.43 in today's dollars, after adjusting for inflation. *See* U.S. Inflation Calculator, *available* at https://www.usinflationcalculator.com.

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order directing Officer Scott Salzmann and Defendant City of Green Bay to pay fees and costs to Plaintiffs equaling $12,827.05. Plaintiffs also respectfully request that the Court order Plaintiffs to pay the fees and costs incurred to bring the instant motion to compel payment of attorney's fees and costs, to be paid at the same standard rates set forth in this memorandum and approved by the Court's order. Once the amount of expenses incurred to litigate the instant motion are determined, Plaintiffs will provide the Court with a full accounting of those expenses at the time they file their reply brief in support of this motion.

Dated: December 31, 2020.    By */s/ Forrest Tahdooahnippah*
Skip Durocher (WI Bar 1018814)
durocher.skip@dorsey.com
Forrest Tahdooahnippah (MN Bar 0391459)
forrest@dorsey.com
Jack Huerter (WI Bar 1098170)
huerter.jack@dorsey.com

DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498 Telephone: (612) 340-2600
Facsimile: (612) 340-2868

David R. Armstrong (WI Bar 1070205)
david.armstrong4@gmail.com
8975 Westchester Dr. Manassas, VA 20112

*Attorneys for Plaintiffs*